UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

**JOSEPH FIERRO,**

<div align="right">Docket #:</div>

<div align="right">

**08 CV 5329**

</div>

<div style="padding-left: 4em;">Plaintiff,</div>

-against-

<div align="right">

**COMPLAINT**

</div>

**THE CITY OF NEW YORK, THE NEW YORK CITY DEPARTMENT OF EDUCATION, SHARON BURNETT,** former Local Instructional Superintendent within Special Education District 75, New York City Department of Education, in her individual and official capacities, **DR. SUSAN ERBER,** former Superintendent, Special Education District 75, Citywide Programs, New York City Department of Education, in her individual and official capacities, and **BONNIE BROWN,** former Deputy Superintendent (and current Superintendent), Special Education District 75, Citywide Programs, New York City Department of Education, in her individual and official capacities,



<div align="center">Defendants.</div>

---------------- -----------------------------------------------------x

Plaintiff JOSEPH FIERRO, by his attorneys, Ofodile & Associates, P.C., complaining of Defendants CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF EDUCATION, SHARON BURNETT (former Local Instructional Superintendent within Special Education District 75, New York City Department of Education), DR. SUSAN ERBER (former Superintendent, Special Education District 75, Citywide Programs, New York City Department of Education), and BONNIE BROWN [former Deputy Superintendent (and current Superintendent), Special Education District 75, Citywide Programs, New York City Department of Education] acting in their individual and official capacities, upon information and belief, alleges as follows:

<div align="center">1</div>

## NATURE OF ACTION

1.    This an action at law pursuant to Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. and the New York City Administrative Code § 8, et seq. to redress discrimination in employment on the basis of sex and sexual harassment in the workplace. This is also an action pursuant to the aforementioned laws to redress *quid pro quo* harassment/retaliation for resisting sexual advances and retaliation for complaining about sexual harassment.

2.    This is also an action at law pursuant to 42 U.S.C. § 1983 to redress violations of Plaintiff's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution by Defendants Sharon Burnett, Bonnie Brown, and Dr. Susan Erber, who are State actors.

3.    This is also an action at law pursuant to Common Law to redress Defendants' violations of Plaintiff's rights under common law through breach of contract and tortious interference with contractual relations.

4.    Plaintiff seeks injunctive and declaratory relief, other equitable relief, compensatory damages, punitive damages, and attorneys' fees and costs and disbursements pursuant to: Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.; 42 U.S.C. § 1983; and Common Law.

## JURISDICTION AND VENUE

5.    Jurisdiction is specifically conferred on the United States District Court by 28 U.S.C. § 1331, this being an action arising under the Constitution and Federal Law, and by 28 U.S.C. § 1343(a)(3), this being an action authorized by law to redress the deprivation, under

2

color of statute, ordinance, regulation, custom or usage, of rights, privileges, and immunities

secured to Plaintiff by: Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et

seq.; the First Amendment to the U.S. Constitution; and 42 U.S.C. § 1983.

      6.      Venue is proper because the events complained of herein occurred in the Bronx,

New York (County of Bronx), which is within the Southern District of New York.

## PARTIES

      7.      During all times relevant and material to this case, Plaintiff Joseph Fierro resided

in the State of New York within the jurisdiction of this Court. During all times relevant and

material to this case, Plaintiff Joseph Fierro was employed by Defendants City of New York

and/or the New York City Department of Education as an Assistant Principal for P12X which

encompassed approximately six school sites and was part of Special Education District 75 of the

New York City Department of Education.

      8.      During all times relevant and material to this case, Defendant City of New York

was a municipal corporation incorporated under the laws of the State of New York and an

employer within the meaning of Title VII.

      9.      During all times relevant and material to this case, Defendant New York City

Department of Education was an agency/department of Defendant City of New York, which in

turn was a municipal corporation incorporated under the laws of the State of New York. During

times relevant material to this case, Defendant New York City Department of Education was an

employer within the meaning of Title VII.

      10.     During all times relevant and material to this case, Defendant Sharon Burnett was

employed by Defendant City of New York and/or the New York City Department of Education

3

as a Local Instructional Superintendent within Special Education District 75, New York City Department of Education.

11.    During all times relevant and material to this case, Defendant Dr. Susan Erber was employed by Defendant City of New York and/or New York City Department of Education as the Superintendent of Special Education District 75, Citywide Programs, New York City Department of Education.

12.    During all times relevant and material to this case, Defendant Bonnie Brown was employed by Defendant City of New York and/or Defendant New York City Department of Education as the Deputy Superintendent of Special Education District 75, Citywide Programs, New York City Department of Education.

13.    During all times relevant and material to this case, Defendant City of New York and/or New York City Department of Education was responsible for the actions of Defendants Sharon Burnett, Dr. Susan Erber, and Bonnie Brown under the common law principal agent / *respondeat superior* rule.

## FULFILLMENT OF ADMINISTRATIVE PREREQUISITES

14.    Furthermore, the New York State Division of Human Rights administratively dismissed the complaint filed before it and vitiated the election of remedies for administrative convenience giving Plaintiff the right to file this action in this Court.

15.    When Plaintiff filed the complaint with the New York State Division of Human Rights, the complaint was dually filed with the U.S. Equal Employment Opportunity Commission under Federal Charge Number 16GA601893. Although the EEOC purports to have issued a "Right to Sue" letter on September 17, 2007, Plaintiff did not receive this "Right to Sue"

4

letter at all in 2007. Furthermore, Plaintiff's Counsel did not receive this letter on his behalf at all in 2007. Plaintiff's Counsel requested a "Right to Sue" letter in a letter to the EEOC on March 11, 2008 because neither Plaintiff's Counsel nor Plaintiff had received such a letter. *See* letter dated March 11, 2008 attached. The EEOC sent Plaintiff's Counsel the "Right to Sue" letter on or about March 19, 2008. *See* postmarked envelope from EEOC, postmarked March 19, 2008, annexed hereto. Plaintiff's Counsel received the "Right to Sue" letter dated September 17, 2007 after March 19, 2008. The "Right to Sue" letter is annexed hereto. Plaintiff himself has never received this letter. This Complaint is being amended to include causes of action under Title VII within ninety days of the receipt of the Notice of Right to Sue. Prior to the commencement of this action, the EEOC has not filed any action nor has it entered into any conciliation agreement regarding the allegations in this complaint.

## FACTUAL ALLEGATIONS

16.    Plaintiff began working as an Assistant Principal for P12X in 2002. P12X is comprised of approximately six school sites in the South Bronx. It is part of Special Education District 75 of the New York City Department of Education. The administration of P12X of which Plaintiff was a part was based at Lewis and Clark High School (2555 Tratman Avenue, Bronx, NY 10461), which was one of the approximately six school sites that made up P12X. That was where the Principal, Ronna Bleadon, Plaintiff, and the other Assistant Principals of P12X had their offices. Plaintiff worked as an Assistant Principal for P12X, reporting to and under the supervision of Ronna Bleadon, until he was abruptly transferred in the Fall of 2005 to one of the top 25 most dangerous schools in New York State in retaliation for complaining about Defendant Bleadon's sexual harassment of him and her retaliation against him.

5

17.     Ronna Bleadon's sexual harassment of Plaintiff developed gradually.  When Plaintiff began his employment at P12X and met Bleadon for the first time in 2002, he was dressed in a suit (as he was almost always dressed at work) and Bleadon commented that he was such a handsome guy in a suit.  During one-on-one business meetings that Plaintiff had with his supervisor Bleadon in her office over the next couple of years, Bleadon repeatedly brought up, and spoke in detail, to Plaintiff about her personal life.  She repeatedly told Plaintiff that her ex-husband had beaten her, degraded/demoralized her, and cheated on her, that she still talked to her ex-husband, that he was a principal at another school, and that she was afraid that he was spreading rumors about her.  She also told Plaintiff many times that her current husband traveled often to Europe and other parts of the world and that he was jealous of Plaintiff because she was always telling her husband how wonderful Plaintiff was and what a good job Plaintiff was doing. Plaintiff felt very uncomfortable with these statements and would respond that there was no reason for her husband to be jealous, as she was Plaintiff's principal and he was Plaintiff's assistant principal and they only worked together.

18.     During the first two years, Ronna Bleadon also made inappropriate comments about Plaintiff's physical appearance, and thereby caused Plaintiff to feel embarrassed, humiliated, and self-conscious.  In the summer, Plaintiff wore shorts to work, after having obtained permission to do so because the school was not air conditioned, and Bleadon often told Plaintiff that he had great legs and that his legs were looking fantastic, and asked him if he had been working out.  She even made these statements to him and asked him these questions in front of staff members and administrators from District 75.

19.     In or about the fall of 2004, Bleadon repeatedly suggested to Plaintiff to come

6

over to her house while her husband was away for the weekend traveling for business and "keep

her company." She made these statements/suggestions in person to Plaintiff while they were at

work, as well as phoned Plaintiff after she left work and made them. Plaintiff was very

uncomfortable with her suggestions and in an attempt to dispel the awkwardness of the situation,

he would respond by saying that he had a jealous girlfriend and that she would not like if he went

over to Bleadon's home.

      20.     On one occasion, Bleadon also asked Plaintiff, "Is it true what they say about

Italians?" Plaintiff responded, "What do you mean?" Bleadon said, "You know." Plaintiff

facetiously asked, "What, that we're smart?" Bleadon said no and repeated "You know."

      21.     Furthermore, starting in the fall of 2004, Bleadon would beckon Plaintiff to her

office by saying "Come see mommy" or "Come to Mama Bleadon" in front of other Assistant

Principals.

      22.     In addition to resisting Bleadon's sexual advances, Plaintiff also exercised his

First Amendment speech in or about the fall of 2004 by refusing to participate in or facilitate

Bleadon's efforts to falsely accuse, falsely implicate, and ruin the careers of two very good

teachers whom Bleadon did not like. Participating in these efforts was not part of Plaintiff's job

description or job duties and therefore, he was exercising his First Amendment freedoms as a

citizen when he refused to participate. One of the two teachers whom Bleadon targeted was Ms.

Grey. Ms. Grey had broken up a fight between two female students, and Ronna Bleadon told

Plaintiff, who had witnessed Ms. Grey breaking up the fight, to lie and say that Ms. Grey had

held the head of one of the girls and told the other girl to punch her. Bleadon was basically

telling Plaintiff to falsely implicate Ms. Grey in a crime – the assault of a minor child. Plaintiff

7

told Bleadon not to turn to him for things like that and that he was not going to lie and destroy a good teacher's career over personal issues that Bleadon had with her. Plaintiff acted as a citizen when he refuted and objected to Bleadon's efforts to falsely implicate Ms. Grey in the assault.

23.     The other teacher for whom Bleadon tried to enlist Plaintiff's help in targeting was a shop teacher named Mr. Simon. Bleadon told Plaintiff to go into Mr. Simon's classroom and find things for which the administration could give Mr. Simon a "U" (Unsatisfactory) rating on his evaluation. In response, Plaintiff told Bleadon that he had been to Mr. Simon's classroom on numerous occasions, that he had always observed Mr. Simon doing his job and relating well to his students, and that he had not seen anything that warranted a "U" rating. Plaintiff further told Bleadon that she was basically asking Plaintiff to go and look for things that were not there and that she should not ask him to do that type of thing and that he was not going to do destroy a good teacher's career. Plaintiff acted as a citizen when he refuted and objected to Bleadon's attempt to make false allegations against Mr. Simon and to falsify his evaluation.

24.     Bleadon retaliated against Plaintiff for resisting her sexual advances and/or exercising his First Amendment freedoms. Her retaliatory actions included but were not limited to: (1) using profane language towards Plaintiff in front of staff and students and making abusive and derogatory remarks to him; (2) taking away vacation days from him; (3) directing him to do manual labor and other tasks outside of his job description; (4) making derogatory remarks about Italian people in front of Plaintiff, knowing that Plaintiff is Italian, and commenting to Plaintiff that Plaintiff was associated with the Mafia; (5) taunting Plaintiff over his learning disabilities including but not limited to by referring to him as "brain dead" and asking him if going to the fourth floor to get someone was "too much for [him] to handle with his

8

disability"; (6) harshly criticizing and ostracizing Plaintiff whereas she used to shower him with praise and tell him that he was going to be principal one day; (7) questioning Plaintiff's sexuality and speaking to staff members about whether Plaintiff was gay, which Plaintiff is not (which was not only a retaliatory action but sexual harassment in and of itself); (8) threatening Plaintiff that she would transfer him to West Side High School (which was a site of P12X that was in many ways less desirable than Lewis & Clark) and he wouldn't have all the comforts that he had at Lewis and Clark; (9) actually transferring him to West Side High School; and (10) falsifying latenesses on Plaintiff's attendance record and then charging him with these false latenesses in his 2005 annual evaluation.

25.     Bleadon followed through on her threat and transferred Plaintiff against his will to West Side High School in the middle of the Spring semester of 2005. After Plaintiff was transferred to West Side, he no longer had his own office, parking spot, computer, or phone, and the atmosphere was much less clean, modern, and maintained than Lewis and Clark. Furthermore, West Side was further from Plaintiff's home than Lewis and Clark and among the damages that he claims in this case is the extra money that he had to spend on gas for his car to travel the extra distance. In addition, by transferring Plaintiff to West Side, Bleadon separated Plaintiff from the other Assistant Principals of P12X, who were still at Lewis and Clark.

26.     Bleadon repeatedly called Plaintiff at West Side to taunt him on the transfer. She would ask how he likes it there at West Side and state, "Not the same comforts that you had here." Plaintiff would say to her that he missed his office and he didn't understand why he no longer had his own office, and she would respond, "Well you think about it." In addition, because Bleadon was still Plaintiff's supervisor, he would have to return to Lewis and Clark for

9

one-on-one meetings with her. As they started these meetings, she would tell him to close the

door and ask, "So, do you miss me?" or "So, you ready to behave?"

27.    In or about August 2005, Plaintiff complained to Defendant Sharon Burnett –

who was then a Local Instructional Superintendent in District 75 supervising P12X among other

schools – that Defendant Ronna Bleadon had sexually harassed him and was retaliating against

him for rebuffing her advances.  Upon Plaintiff's information and belief, Defendant Burnett

spoke to Defendants Bonnie Brown and Dr. Susan Erber, who at the time were the Deputy

Superintendent and Superintendent of District 75, respectively, about Plaintiff's complaints.  In

retaliation for Plaintiff's complaints about Defendant Bleadon, Defendant Burnett got back in

contact with Plaintiff and told him that it had been decided that he would be transferred to

P753K, which was a District 75 high school in Brooklyn that had been named by New York State

as one of the top 25 most dangerous schools in the State.  Plaintiff told Burnett that he didn't

want to go to P753K and that he wanted the issue with Bleadon resolved.  Plaintiff explained to

Burnett that P753K was one of the most dangerous schools in the State and that he had already

placed his life at risk at another dangerous school earlier in his career where he had had to

wrestle handguns to the ground and had been stabbed twice.  Defendant Burnett told Plaintiff that

he had to go to P753K.  Thereby, Plaintiff was transferred against his will to P753K, in

retaliation for complaining about Defendant Bleadon's sexual harassment of him and about her

retaliation against him for rebuffing her advances.  Plaintiff, who had already served as Assistant

Principal at P12X for three years, would have received tenure at P12X after another two years

and Defendants' abrupt transfer of him to another school threw a wrench into his progress toward

tenure, and Plaintiff claims as specific damages raises and benefits associated with receiving

tenure.

28.    Furthermore, Plaintiff was a member of the union, Council of School Supervisors and Administrators (CSA), which was Local 1 of the American Federation of School Administrators, AFL-CIO. Defendants' abrupt transfer of Plaintiff to another school was a violation of the CSA's contract/agreement with the City of New York and/or the New York City Department of Education. It was also a violation of the New York City Chancellor's Rules and Regulations.

29.    Plaintiff suffered great emotional, mental, and physical distress as a result of Defendants' unlawful actions. He received medical treatment for his distress and was prescribed medication. Among the specific damages that he claims in this case are the insurance co-pays that he had to pay for the medical visits and medication. In addition, Defendants' actions toward Plaintiff were a major cause of his having to take a medical leave of absence in the Spring of 2006. He was not paid for approximately 20 days (4 weeks) of this leave of absence, and claims these lost wages as specific damages in this case. He also claims reinstatement of his sick days.

30.    Furthermore, Plaintiff had planned to undergo training in early 2005 to work one-on-one with autistic children after school, on weekends, and during the summer. Because there was a shortage of such workers, Plaintiff would have obtained employment almost immediately after the training. However, the distress that he suffered from the sexual harassment and the retaliation prevented him from pursuing the training in early 2005. He was not able to do the training until the summer of 2006 and the distress from Defendants' actions was a major contributing factor to him not being able to start performing the work for which he was trained until recently. Therefore, Plaintiff claims as specific damages the wages that he would have

11

earned in such a position had he not been prevented him from doing the training and starting to work in early 2005.

31.    Since the filing of a related action, Plaintiff believes that Defendants have perpetrated the additional retaliatory act of pressuring the Principal of the District 75 school where Plaintiff is a teacher to terminate him. The Principal of Plaintiff's current school, who is aware of the instant lawsuit, advised Plaintiff that he didn't think he would be able to have Plaintiff return to his school as a teacher for the next academic year, even though there are at least two teachers in the school to whom Plaintiff has seniority and who haven't been threatened with removal.

## FOR A FIRST CAUSE OF ACTION

32.    Plaintiff repeats and realleges paragraphs 1 through 31 as if each paragraph is repeated verbatim herein.

33.    In violation of Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., Defendants City of New York and/or the New York City Department of Education discriminated against Plaintiff on the basis of his male sex in the terms, conditions, and privileges of his employment by sexually harassing him and subjecting him to a sexually hostile work environment.

## AND AS FOR A SECOND CAUSE OF ACTION

34.    Plaintiff repeats and realleges paragraphs 1 through 33 as if each paragraph is repeated verbatim herein.

35.    In violation of Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., Defendants City of New York and/or the New York City Department of Education

retaliated against Plaintiff for rebuffing Bleadon's sexual advances by subjecting him to a hostile work environment, including but not limited to:  using profane language towards Plaintiff in front of staff and students and making abusive and derogatory remarks to him; taking away vacation days from him; directing him to do manual labor and other tasks outside of his job description; making derogatory remarks about Italian people in front of Plaintiff, knowing that Plaintiff is Italian, and commenting to Plaintiff that Plaintiff was associated with the Mafia; taunting Plaintiff over his learning disabilities including but not limited to by referring to him as "brain dead" and asking him if going to the fourth floor to get someone was "too much for [him] to handle with his disability"; harshly criticizing and ostracizing Plaintiff whereas Defendant Bleadon used to shower him with praise and tell him that he was going to be principal one day; questioning Plaintiff's sexuality and speaking to staff members about whether Plaintiff was gay, which Plaintiff is not (which was not only a retaliatory action but sexual harassment in and of itself); threatening Plaintiff that he would be transferred to West Side (which was a site that was in many ways less desirable than Lewis & Clark) and telling him he wouldn't have all the comforts that he had at Lewis and Clark; actually transferring Plaintiff to West Side; and falsifying latenesses on Plaintiff's attendance record and then charging him with these false latenesses in his 2005 annual evaluation.

## AND AS FOR A THIRD CAUSE OF ACTION

36.    Plaintiff repeats and realleges paragraphs 1 through 35 as if each paragraph is repeated verbatim herein.

37.    In violation of Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., Defendants City of New York and/or the New York City Department of Education

13

retaliated against Plaintiff with the tangible action of transferring him to West Side, which was further from his home and much less clean, modern, and maintained than Lewis & Clark and where among other things he was not provided with his own parking spot, computer, or phone and he was separated from the other Assistant Principals.

## AND AS FOR A FOURTH CAUSE OF ACTION

38.     Plaintiff repeats and realleges paragraphs 1 through 37 as if each paragraph is repeated verbatim herein.

39.     In violation of Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., Defendant City of New York and/or the New York City Department of Education retaliated against Plaintiff for complaining about Ronna Bleadon's sexual harassment of him and retaliation against him including by, but not limited to, transferring him, against his will from P12X to P753K, which was one of the top 25 most dangerous schools in New York State.

## AND AS FOR A FIFTH CAUSE OF ACTION

40.     Plaintiff repeats and realleges paragraphs 1 through 39 as if each paragraph is repeated verbatim herein.

41.     In violation of Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., Defendant City of New York and/or the New York City Department of Education retaliated against Plaintiff for complaining about Ronna Bleadon's sexual harassment of him and retaliation against him by subjecting him to a retaliatory hostile work environment.

## AND AS FOR A SIXTH CAUSE OF ACTION

42.     Plaintiff repeats and realleges paragraphs 1 through 41 as if each paragraph is repeated verbatim herein.

14

43.    Defendants City of New York and/or the New York City Department of Education breached the contract that it/they had with Plaintiff's union, CSA, by transferring Plaintiff, an Assistant Principal appointed at P12X, to another school.  Plaintiff was a beneficiary of this contract.  The breach threw a wrench into Plaintiff's progress toward tenure.

## AND AS FOR A SEVENTH CAUSE OF ACTION

44.    Plaintiff repeats and re-alleges paragraphs 1 through 43 as if each paragraph is repeated verbatim herein.

45.    Plaintiff, through his membership in the CSA, had a contract of employment with Defendants City of New York and/or the New York City Department of Education.  Defendants Sharon Burnett, Bonnie Brown, and Dr. Susan Erber knew that Plaintiff had said contract of employment and intentionally and arbitrarily procured the breach of that contract by transferring Plaintiff from P12X, where he had been appointed as Assistant Principal, to P753K.

46.    In transferring Plaintiff to another school, Defendants Sharon Burnett, Bonnie Brown, and Dr. Susan Erber acted in bad faith and acted purely out of self-interest, animosity, and vindictiveness against Plaintiff, thus exceeding the limits of their authority.  With reference to the foregoing, their actions were neither justified nor taken in the interest of the City of New York and/or the New York City Department of Education.

47.    Defendants Sharon Burnett, Bonnie Brown, and Dr. Susan Erber knew that they were acting improperly, illegally, and maliciously in transferring Plaintiff to another school. Their abrupt transfer of Plaintiff to another school caused Plaintiff damage.

48.    Defendants Sharon Burnett, Bonnie Brown, and Dr. Susan Erber were not parties to Plaintiff's contract of employment with the City of New York and/or the New York City

15

Department of Education. In maliciously transferring Plaintiff, Defendants Burnett, Brown, and

Erber acted outside the boundaries of their employment, and intentionally and tortiously

interfered with Plaintiff's contract of employment with Defendants City of New York and/or the

New York City Department of Education, and thereby are liable to Plaintiff for the Common Law

tort of Tortious Interference with Contractual Relations.

## AND AS FOR AN EIGHTH CAUSE OF ACTION

49.    Plaintiff repeats and realleges paragraphs 1 through 48 as if each paragraph is

repeated verbatim herein.

50.    While acting under color of State Law, Defendants Sharon Burnett, Bonnie

Brown, and Dr. Susan Erber violated Plaintiff's right to due process under the Fifth and

Fourteenth Amendments to the United States Constitution by transferring Plaintiff from P12X,

where he had been appointed as an Assistant Principal, to another school without a hearing.

51.    By violating Plaintiff's Fifth and Fourteenth rights to the United States

Constitution while acting under color of State Law, Defendants Sharon Burnett, Bonnie Brown,

and Dr. Susan Erber violated 42 U.S.C. § 1983.

## AND AS FOR A NINTH CAUSE OF ACTION

52.    Plaintiff repeats and realleges paragraphs 1 through 51 as if each paragraph is

repeated verbatim herein.

53    While acting under color of State Law, Defendants Sharon Burnett, Bonnie

Brown, and Dr. Susan Erber conspired to violate Plaintiff's right to due process under the Fifth

and Fourteenth Amendments to the United States Constitution by conspiring to transfer Plaintiff

from P12X, where he had been appointed as an Assistant Principal, to another school without a

16

hearing.

54. By conspiring to violate Plaintiff's rights under the Fifth and Fourteenth Amendments to the United States Constitution while acting under color of State law, Defendants Sharon Burnett, Bonnie Brown, and Dr. Susan Erber violated 42 U.S.C. § 1983.

**WHEREFORE,** Plaintiff prays for judgment as follows:

**Under Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., for each of the First, Second, Third, Fourth, and Fifth Causes of Action against Defendants City of New York and/or the New York City Department of Education, jointly and severally:**

    i.    declaring the acts and conduct complained of herein in violation of the Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.;

    ii.    enjoining and permanently restraining these violations and directing Defendants City of New York and/or the New York City Department of Education to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

    iii.    enjoining Defendants City of New York and/or the New York City Department of Education from committing or allowing any further harassment of Plaintiff or retaliation against Plaintiff;

    iv.    ordering Defendants City of New York and/or the New York City Department of Education, jointly and severally, to pay Plaintiff general and compensatory damages in an amount to be determined at trial for pain

and suffering, humiliation, emotional distress, mental anguish, and physical distress suffered by Plaintiff;

v.  awarding Plaintiff specific damages for the wages that he lost while taking a medical leave of absence in the Spring of 2006;

vi.  ordering Defendants to reinstate the sick days that Plaintiff used for the medical leave of absence that he took in the Spring of 2006;

vii.  awarding Plaintiff specific damages for the wages that he has lost since early 2005 because the distress that he suffered as a result of Defendants' actions severely delayed him pursuing training and then employment to work one-on-one with autistic children;

viii.  awarding Plaintiff specific damages for the insurance co-pays that he has paid for medical treatment and medication that he has received for the physical, emotional, and mental distress that he has suffered as a result of Defendants' actions;

ix.  awarding Plaintiff specific damages for the extra money that he spent on gas having to travel to and from West Side High School;

x.  awarding Plaintiff attorneys' fees and the reasonable costs and disbursements of this action; and

xi.  granting any other and further relief to the Plaintiff as the Court deems necessary, just, and proper.

**Under common law breach of contract for the Sixth Cause of Action against Defendants City of New York and the New York City Department of Education, jointly**

**and severally:**

  i.  declaring the acts and conduct complained of herein in violation of

    Common Law;

  ii.  enjoining and permanently restraining further breaches and directing

    Defendants City of New York and/or the New York City Department of

    Education to take such affirmative action as is necessary to ensure that the

    effects of this unlawful practice are eliminated;

  iii.  ordering Defendants City of New York and/or the New York City

    Department of Education, jointly and severally to pay Plaintiff general and

    compensatory damages in an amount to be determined at trial for pain and

    suffering, humiliation, emotional distress, and mental anguish suffered by

    Plaintiff as a result of the breach;

  iv.  awarding Plaintiff specific damages for the wages that Plaintiff lost while

    taking a medical leave of absence in the Spring of 2006;

  v.  ordering Defendants to reinstate the sick days that Plaintiff used for the

    medical leave of absence that he took in the Spring of 2006;

  vi.  awarding Plaintiff specific damages for the wages that he has lost since

    early 2005 because the distress that he has suffered as a result of

    Defendants' actions severely delayed his pursuing training and then

    employment to work one-on-one with autistic children;

  vii.  awarding Plaintiff specific damages for the insurance co-pays that he has

    paid for medical treatment and medication that he received for the

physical, emotional, and mental distress that he has suffered as a result of Defendants' actions;

viii.    awarding Plaintiff the reasonable costs and disbursements of this action; and

ix.    granting any other and further relief to the Plaintiff as the Court deems necessary, just, and proper.

**Under common law tortious interference with contractual relations for the Seventh Cause of Action against Defendants Sharon Burnett, Bonnie Brown, and Dr. Susan Erber, jointly and severally:**

i.    declaring the acts and conduct complained of herein in violation of Common Law;

ii.    enjoining and permanently restraining further acts of tortuous interference with contractual relations and directing Defendants Burnett, Brown, and Erber to take such affirmative action as is necessary to ensure that the effects of this unlawful practice are eliminated;

iii.    ordering Defendants Burnett, Brown, and Erber, jointly and severally, to pay Plaintiff general and compensatory damages in an amount to be determined at trial for pain and suffering, humiliation, emotional distress, and mental anguish suffered by Plaintiff;

iv.    awarding Plaintiff specific damages for the wages that Plaintiff lost while taking a medical leave of absence in the Spring of 2006;

v.    ordering Defendants to reinstate the sick days that Plaintiff used for the

20

medical leave of absence that he took in the Spring of 2006;

vi.    awarding Plaintiff specific damages for the wages that he has lost since early 2005 because the distress that he has suffered as a result of Defendant's actions severely delayed his pursuing training and then employment to work one-on-one with autistic children;

vii.    awarding Plaintiff specific damages for the insurance co-pays that he has paid for medical treatment and medication that he received for the physical, emotional, and mental distress that he has suffered as a result of Defendants' actions;

viii.    awarding Plaintiff punitive damages in an amount to be determined at trial;

ix.    awarding Plaintiff the reasonable costs and disbursements of this action; and

x.    granting any other and further relief to the Plaintiff as the Court deems necessary, just, and proper.

**Under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments for each of the Eighth and Ninth Causes of Action against Defendants Sharon Burnett, Bonnie Brown, and Dr. Susan Erber, jointly and severally:**

i.    declaring the acts and conduct complained of herein in violation of Plaintiff's rights under the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983;

ii.    enjoining and permanently restraining these violations and directing

21

Defendant Burnett, Brown, and Erber to take such affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated;

iii. enjoining Defendant Burnett, Brown, and Erber from committing or allowing any further due process violations against Plaintiff;

iv. ordering Defendants Burnett, Brown, and Erber, jointly and severally, to pay Plaintiff general and compensatory damages in an amount to be determined at trial for pain and suffering, humiliation, emotional distress, and mental anguish suffered by Plaintiff;

v. awarding Plaintiff specific damages for the wages that he lost while taking a medical leave of absence in the Spring of 2006;

vi. ordering Defendants to reinstate the sick days that Plaintiff used for the medical leave of absence that he took in the Spring of 2006;

vii. awarding Plaintiff specific damages for the wages that he has lost since early 2005 because the distress that he has suffered as a result of Defendants' actions severely delayed his pursuing training and then employment to work one-on-one with autistic children;

viii. awarding Plaintiff specific damages for the insurance co-pays that he has paid for medical treatment and medication that he received for the physical, emotional, and mental distress that he has suffered as a result of Defendants' actions;

ix. awarding Plaintiff punitive damages in an amount to be determined at

trial;

x.     awarding Plaintiff attorneys' fees and the reasonable costs and

disbursements of this action; and

xi.    granting any other and further relief to the Plaintiff as the Court deems

necessary, just, and proper.

Dated: Brooklyn, New York
       June 10, 2008

OFODILE & ASSOCIATES, P.C.
Attorneys for Plaintiff Joseph Fierro

By: _____
    Anthony C. Ofodile, Esq. (AO-8295)
    498 Atlantic Avenue
    Brooklyn, New York 11217
    Tel. No.: (718) 852-8300

23

# OFODILE & ASSOCIATES, P.C.

**ATTORNEYS-AT-LAW**

Anthony C. Ofodile, Esq.
Kathy A. Polias, Esq.

498 Atlantic Ave.
Brooklyn, NY 11217

Phone:    (718) 852-8300
Facsimile: (718) 852-7361

March 11, 2008

Director
U.S. Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004-2112

> Re:    *Fierro v. City of New York*
> Federal/EEOC Charge No.:  16GA601893

Dear Director:

We represent Complainant Joseph Fierro in the above-referenced Federal/EEOC complaint.

Complainant Joseph Fierro would like to request from the EEOC a Right to Sue Letter, as more than six months have elapsed since Mr. Fierro filed a complaint with the New York State Division of Human Rights, which was dually filed with the EEOC and assigned Federal Charge No. 16GA601893. Plaintiff's complaint was for discrimination on the basis of disability, national origin, creed, sex, sexual orientation, and race/color and retaliation for opposing discrimination.

Please send a Right to Sue letter to our office for Federal Charge No.16GA601893 at your earliest convenience. Thank you for your time and attention to these matters.

Sincerely,

Kathy A. Polias, Esq.

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To:     **Joseph Fierro**
        4009 Seagate Avenue, Apt. 2
        Brooklyn, NY 11224

From:   **New York District Office**
        33 Whitehall Street
        5th Floor
        New York, NY 10004

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2006-01893 | Holly M. Woodyard, Investigator | (212) 336-3643 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☒ Other (briefly state)    **Charging Party to Pursue Matter in Court.**

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt **of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Spencer H. Lewis, Jr.,_
Director

9/17/07
(Date Mailed)

Enclosures(s)

cc:     **CITY OF NEW YORK, DEPT OF EDUCATION**
        52 Chambers Street, Room 308
        New York, NY 10007
        Attn: Human Resource Director

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
New York District Office
33 Whitehall Street, 5th Fl
New York, N.Y. 10004

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

UNITED STATES POSTAGE

PITNEY BOWES

02 1A
0004601382
$ 00.410
MAR 19 2008
MAILED FROM ZIP CODE 10004

Ofodile & Associates PC.
498 Atlantic Ave.
Brooklyn, NY. 11217
Attn: Kathy A. Polias, Esq.

ii2i78i8i3 C016

Index No.                                Year

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH FIERRO,

Plaintiff,

-against-

THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF EDUCATION,
SHARON BURNETT, former Local Instructional Superintendent within
Special District 75, New York City Department of Education, in her
individual and official capacities, DR. SUSAN ERBER, former
Superintendent, Special Education District 75, Citywide Programs,
New York City Department of Education, in her individual and
official capacities, and BONNIE
BROWN, former Deputy Superinten-
dent (and current Superinten-
dent), Special Education Dis-
trict 75, Citywide Programs, New
York City Department of
Education, in her individual and
official Capacities, Defendants.

COMPLAINT

Signature (Rule 130-1.1-a)

Print name beneath

Ofodile & Associates, P.C.

Attorney for   Plaintiff Joseph Fierro

Office and Post Office Address, Telephone

Ofodile & Associates, P.C.
498 Atlantic Avenue
Brooklyn, NY 11217      Tel. No.:   (718) 852-8300.

To

Attorney(s) for

Service of a copy of the within is hereby admitted.
Dated,

Attorney(s) for

‧‧‧‧   Bloomberg Crossing Inc.   ‧‧‧‧ ‧‧‧‧‧‧

NOTICE OF ENTRY

PLEASE take notice that the within is a (certified)
true copy of a
duly entered in the office of the clerk of the within
named court on

Dated,

Yours, etc.

Attorney for

Office and Post Office Address

To

Attorney(s) for

NOTICE OF SETTLEMENT

PLEASE take notice that an order
of which the within is a true copy will be presented
for settlement to the Hon.
one of the judges of the within named Court, at

on
at           M.
Dated,

Yours, etc.

Attorney for

Office and Post Office Address

To

Attorney(s) for